## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALIEX PAPPILLION (#182589)**             **CIVIL ACTION NO.**

**VERSUS**             **19-117-SDD-SDJ**

**LOUISIANA DEPT. OF PUBLIC
SAFETY AND CORRECTIONS, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 3, 2021.

_____
**SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALIEX PAPPILLION (#182589)** | **CIVIL ACTION NO.** |
| **VERSUS** | **19-117-SDD-SDJ** |
| **LOUISIANA DEPT. OF PUBLIC SAFETY AND CORRECTIONS, ET AL.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion to Dismiss filed by the Louisiana Department of Public Safety and Corrections,[1] Randy Lavespere, John Morrison, and Raman Singh.[2] The Motion is opposed.[3] It is recommended that the Motion be granted in part, that all claims for declaratory and injunctive relief, claims regarding medical care that are purported to be brought pursuant to the ADA/RA,[4] claims for damages brought against Lavespere, Morrison, and Singh in their official capacities, and the claims for damages brought against the LDPS&C for constitutional violations pursuant to 42 U.S.C. §1983 be dismissed with prejudice, and that this matter be stayed and administratively closed.[5]

**I.    Background**

Aliex Pappillion, an inmate confined at the Louisiana State Penitentiary in Angola, Louisiana, who is representing himself, brings this suit against the LDPS&C, John Morrison,

---

[1] Referred to hereinafter as the "LDPS&C."
[2] R. Docs. 13 & 22.  In response to an Order of this Court (R. Doc. 23), Defendants also filed a Supplemental Memorandum in Support of the Motion to Dismiss.  R. Doc. 24.
[3] R. Doc. 14.
[4] The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and Rehabilitation Act, 29 U.S.C. § 701, are referred to herein as the ADA and RA.
[5] If this Report is adopted, the claims that will remain are Plaintiff's claims for monetary relief against Lavespere, Morrison, and Singh for constitutional violations arising from the policies and practices that have caused inadequate and delayed treatment for Plaintiff's left shoulder and lumbar spine and Plaintiff's claims under the ADA/RA for damages against the LDPS&C for claims brought pursuant to the ADA/RA other than those arising from inadequate medical treatment.

Raman Singh, and Randy Lavespere under 42 U.S.C. § 1983. Plaintiff alleges that defendants have "implemented a widespread and pervasive policy, practice or custom of deliberately delaying doctor-recommendations for medically necessary elective surgery…."[6] As further detailed below, Plaintiff avers that he has injuries that require surgery, but those surgeries have been indefinitely delayed causing him to suffer continuing excruciating pain.[7] Additionally, Plaintiff complains that he has been denied access to various services as a result of his injuries. Plaintiff alleges that Defendants' actions constitute violations of the Eighth Amendment, the ADA, and the RA.[8] He seeks declaratory, injunctive, and monetary relief.[9]

## II.    Law & Analysis

### A.  Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[10] and *Ashcroft v. Iqbal*,[11] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[12] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] It follows that,

---

[6] R. Doc. 1-2, pp. 16-19.
[7] *See* R. Doc. 1-2, pp. 23, 26. Plaintiff states in his complaint that the issues surrounding treatment for his left shoulder and lumbar spine form the basis of his complaint. The information regarding the right shoulder injury has been provided as background to put Plaintiff's claims in context. R. Doc. 1-2, pp. 12, 24. *See also* R. Doc. 1-2, p. 6. (Plaintiff states that the facts regarding injury to his right shoulder and initial treatment surrounding that injury "do not form the basis for *this* complaint"). Thus, considering whether the claims regarding the right shoulder are prescribed as asserted by Defendants (R. Doc. 13-1, pp. 2-4) is unnecessary.
[8] R. Doc. 1-2, p. 26.
[9] R. Doc. 1-2, pp. 31-33.
[10] 550 U.S. 544 (2007).
[11] 556 U.S. 662 (2009).
[12] *Twombly,* 550 U.S. at 555.
[13] *Iqbal,* 556 U.S. at 678, (quoting *Twombly*, 550 U.S. 544).
[14] *Id.*

2

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[15]  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[16]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[17]  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[18]  Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[19]  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[20]  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[21] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[22]

### B. Plaintiff's Claims for Injunctive & Declaratory Relief are Barred by the Doctrine of *Res Judicata*

"[P]ro se plaintiffs are not exempt from the rules of *res judicata*."[23]  "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating

---

[15] *Id.* at 679.
[16] *Id.* at 678 (internal quotation marks omitted).
[17] *Erickson*, 551 U.S. at 94.
[18] *Id.* (citation omitted).
[19] Fed. R. Civ. P. 8(a)(2).
[20] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[21] *Papasan v. Allain*, 478 U.S. 265, 286 (1986)
[22] *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).
[23] *Murry v. General Services Administration*, 553 Fed. Appx. 362, 364 (5th Cir. 2014). *See also Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law. One who proceeds pro se with full knowledge and understanding of the risks involved acquires no greater right than a litigant represented by a lawyer…").

3

issues that were or could have been raised in that action."[24] "Res judicata prohibits the re-litigation of claims that were, *or could have been*, raised in the prior action."[25] The test for whether *res judicata* bars a claim has four elements: "(1) both suits involved identical parties; (2) there is an existing final judgment on the merits that was (3) rendered by a court of competent jurisdiction; and (4) the suits involved the same claim or cause of action."[26] The Fifth Circuit uses a "transactional test" to determine "whether both suits involve the same cause of action," and the "critical issue" under that test is "whether the two actions are based on the same nucleus of operative facts."[27] Put differently, "[u]nder the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of transactions, out of which the original action arose.'"[28] "The critical issue under the transactional test is whether the two actions are based on the 'same nucleus of operative facts.'"[29] "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must 'be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[30]

It is clear that the claims brought by Plaintiff herein are based upon the same nucleus of operative facts as the claims raised in the class action *Lewis v. Cain*.[31] Plaintiff was included in

---

[24] *Houston Professional Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).
[25] *Blair v. Yum! Brands, Inc.*, 832 Fed. Appx. 893, 894 (5th Cir. 2021) (per curiam) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-13 (5th Cir. 2001) ("*Davis II*") (emphasis supplied). *See also Alfred v. Louisiana*, No. 14-298, 2015 WL 1781556, at *1 (M.D. La. Apr. 20, 2015) ("*Res judicata* bars duplicative and redundant litigation involving the same parties and the same claims.").
[26] *Id*. (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). *See also Alfred*, 2015 WL 1781556, at *1.
[27] *Id*. (citing *Test Masters*, 428 F.3d at 572).
[28] *Davis II*, 383 F.3d at 313 (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004)).
[29] *Id*. (quoting *Davis II*, 383 F.3d at 313).
[30] *Id*. (quoting *Davis II*, 383 F.3d at 313 (quoting Restatement (Second) of Judgments § 24(2) (1982))).
[31] *Lewis v. Cain*, No. 15-318 (M.D. La.).

4

the class and subclass[32] of prisoners represented in *Lewis*, as the class and subclass were defined as "all inmates who now, or will be in the future, incarcerated at LSP and all qualified individuals with a disability, as defined by the ADA/RA, who are now, or will be in the future, incarcerated at LSP."[33] Here, Plaintiff complains of systematic deficiencies in the medical care provided at LSP, including delaying necessary medical treatment and failing to provide necessary treatments such as physical therapy and follow-up care, as well as exclusion from services and programs as a result of his alleged disability,[34] *Lewis* also contained claims regarding the systematic failures of LSP to provide medical care and claims regarding the systemic failure of LSP to provide accommodations to disabled inmates.[35]

The *Lewis* class action is one of massive proportions, touching on many aspects of medical care and accommodations, and the remedy phase is to address nearly every facet of medical care at LSP. Thus, an individual cause of action that also includes complaints regarding medical care and accommodations that are subsumed in the class action, is not maintainable.[36] Because Plaintiff brings claims herein that arise from the same common nucleus of operative facts as those claims in *Lewis*, he is barred by the doctrine of *res judicata* from pursuing his own individual lawsuit that

---

[32] The Court is, at this time, giving Plaintiff the benefit of the doubt in presuming he has a qualifying disability because Defendants have made no arguments to the contrary. If Plaintiff does in fact have a qualifying disability, his is part of the ADA/RA subclass, if it is ultimately determined that he does not have a qualifying disability, he will have no ADA/RA claims in either this suit or the class action.
[33] *Lewis v. Cain*, No. 15-318 (M.D. La.) at R. Doc. 394, p. 30 (internal quotation marks omitted).
[34] *See* R. Doc. 1-2, pp. 1 & 26-27 (Plaintiff filed the Complaint against Defendants "for implementing a policy, practice, or custom of deliberately delaying <u>doctor recommendations</u> for medically necessary elective treatment, procedures, physical therapy or surgery to repair non life-threatening conditions…" and complained of being excluded from various programs as a result of his disability).
[35] *See Lewis v. Cain*, No. 15-318 (M.D. La.) at R. Doc. 1, pp. 2-3 & R. Doc. 594, pp. 108-109. Additionally, all Defendants named herein are also named in *Lewis*, and a judgment has been entered in *Lewis* by a Court of competent jurisdiction. *See Lewis v. Cain*, No. 15-318 (M.D. La.) at R. Doc. 594. There is overlap between Plaintiff's ADA/RA complaints and those in *Lewis* including, but not limited to, complaints regarding being excluded from prison jobs, work release, hobby craft, etc. Some of these claims were dismissed in *Lewis*, but some survived, and regardless, all claims brought by Plaintiff herein could have been brought in *Lewis*.
[36] *See Green v. McKaskle*, 770 F.2d 445, 446-47 (5th Cir. 1985) (finding that individual causes of action that were comparable to those litigated in a class action were not maintainable because the class action was "one of massive proportions…directed at almost every facet of the facilities and the treatment of prisoners in the prisons of Texas.").

5

seeks equitable relief within the subject matter of the class action.[37]  Though Plaintiff may not proceed herein to seek declaratory and injunctive relief, he may "of course, seek to intervene in the class action and may contend for intervention, or object to the binding effect of a class action judgment, on the ground that [he was] not…adequately represented in the class action."[38]

However, contrary to Defendants' assertion that Plaintiff is only seeking declaratory and injunctive relief, his Complaint makes clear that he is seeking damages against the LDPS&C, John Morrison,[39] Raman Singh, and Randy Lavespere.  Thus, though Plaintiff's claims for injunctive and declaratory relief have already been litigated and are *res judicata*, as discussed below, Plaintiff is not precluded from seeking damages against these Defendants.

As a general proposition, if the elements of res judicata are met, the doctrine bars all claims that were or could have been brought in an earlier action.[40]  This general principle extends to class actions.[41]  However, Rule 23(c)(4) provides that class actions may be limited to particular issues, and courts might recognize that individual suits for compensatory damages should not be barred by a judgment in a related class action, if the court hearing the class action concluded that compensatory damages were not amenable to resolution in a class action, and chose to hear only claims for equitable relief.[42]

---

[37] *Green*, 770 F.2d at 447.
[38] *Green*, 770 F.2d at 446-47.
[39] R. Doc. 1-2, pp. 9-10, 33.  Though there is a conflict in the Complaint because Plaintiff both says Morrison is being sued in his individual capacity (R. Doc. 1-2, p. 9) and states later that Morrison is not being sued in his individual capacity (R. Doc. 1-2, p. 34), the Court reads the Complaint broadly since Plaintiff is proceeding *pro se* and considers Morrison to be sued in both his individual and official capacities.
[40] *See United States v. Shanbaum,* 10 F.3d 305, 310 (5th Cir.1994) (recognizing that "claim preclusion prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or opposition to the cause of action asserted in the prior action").
[41] *See Penson v. Terminal Transport Co.,* 634 F.2d 989, 994, 996 (5th Cir.1981) (noting "the advent of the 'hybrid' Rule 23(b)(2) class action in which individual monetary relief for class members, typically back pay, is sought in addition to classwide injunctive or declaratory relief," and recognizing that "[a] judgment or consent decree entered in a class action can bind the absent class member even though the member had filed a claim or instituted a personal suit before the decision in the class action").
[42] *Cf. D–1 Enters., Inc. v. Commercial State Bank,* 864 F.2d 36, 38 (5th Cir.1989) ("Essential to the application of the doctrine of *res judicata* is the principle that the previously unlitigated claims to be precluded could and should have

Generally, a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events.[43] In fact, "every federal court of appeals that has considered the question has held that a class action seeking only declaratory or injunctive relief does not bar subsequent individual suits for damages."[44] Indeed, as stated by the plaintiffs in the class action, "[n]one of the Plaintiffs request damages or individual relief; rather, they seek injunctive relief to abate the systemic deficiencies in Defendants' policies and practice that subject all inmates to unreasonable risks of serious harm."[45] A broad-gauged class complaint should not mean that all future litigation involving harm to individual prisoners will be precluded. If every member of the class were compelled to intervene to protect his individual claims, serious questions would be raised as to the adequacy of the class representatives, and the class action would become unmanageable."[46] There is no need to stray from the widely accepted general rule in this case. As with prisoner litigation, generally, had every inmate who had been harmed by the widespread deficiencies in medical care at LSP been required to intervene in the class action to protect his rights, the litigation would have become

---

been brought in the earlier litigation."); *Bogard v. Cook,* 586 F.2d 399, 408–09 (5th Cir.1978) (holding that class action seeking equitable relief did not bar subsequent individual suit for damages where class action notice did not alert class members to possibility that they could seek individual damages and inclusion of individual damage claims would have made class action unmanageable).

[43] *Hiser v. Franklin*, 94 F.3d 1287, 1291–92 (9th Cir. 1996).

[44] *In re Jackson Lockdown/MCO Cases,* 568 F.Supp. 869, 892 (E.D.Mich.1983); *see, e.g., Fortner v. Thomas,* 983 F.2d 1024, 1030–32 (11th Cir.1993) ("It is clear that a prisoner's claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief, even if the prisoner is a member of a pending class action."); Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4455 (1981 and 1995 Supp.) (collecting cases). The basic effort to limit class adjudication as close as possible to matters common to members of the class frequently requires that nonparticipating members of the class remain free to pursue individual actions that would be merged or barred by claim preclusion had a prior individual action been brought for the relief demanded in the class action. An individual who has suffered particular injury as a result of practices enjoined in a class action, for instance, should remain free to seek a damages remedy even though claim preclusion would defeat a second action had the first action been an individual suit for the same injunctive relief. Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4455 (1981).

[45] R. Doc. 140, p. 2. Additionally, due process concerns would arise with respect to the notice given to Plaintiff and others like him if the class action had a preclusive effect with respect to damages. *See Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 436–38 (5th Cir. 1979).

[46] *Hiser v. Franklin*, 94 F.3d 1287, 1291–92 (9th Cir. 1996) (citing *Wright v. Collins,* 766 F.2d 841, 847–49 (4th Cir.1985)) (internal quotation marks and citations omitted).

unmanageable; thus, individual damage claims realistically *could not* have been brought in the class action.[47] "Claims for individual damage relief would have required separate mini-trials for each prisoner. Additionally, because damage relief for the constitutional violations could only have been sought against officials in their individual capacity, the problem of qualified immunity would have been injected into the suit."[48] Thus, Plaintiff's claim for damages against Defendants is not barred by *res judicata*.

### C. The Louisiana Department of Public Safety is Not a Proper Defendant for a Claim for Monetary Relief for the Claims Brought Pursuant to 42 U.S.C. § 1983

Because Plaintiff's claims for injunctive and declaratory relief against the LDPS&C are barred by the doctrine of *res judicata*, the only viable claims are those for monetary relief. However, under the Eleventh Amendment to the United States Constitution, an unconsenting state is immune from suits seeking monetary damages brought in federal courts by her own citizens as well as citizens of another state.[49] Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for deprivation of civil rights under color of state law.[50] Thus, absent consent by the state or congressional action, a state is immune from a suit for damages. Louisiana has not waived her sovereign immunity under the Eleventh Amendment and is immune from suit in this action. The shield of immunity extends to the LDPS&C[51] as an agency of the state and to the institutions it maintains.[52] Accordingly,

---

[47] *See Bogard v. Cook*, 586 F.2d 399, 408 (5th Cir. 1978).
[48] *Bogard v. Cook*, 586 F.2d 399, 409 (5th Cir. 1978).
[49] *Edelman v. Jordan,* 415 U.S. 659 (1974).
[50] *See Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976); *Quern v. Jordan,* 440 U.S. 332 (1979).
[51] Plaintiff oddly noted the LDPS&C as being sued "as a municipality." (R. Doc. 1, p. 1). This designation is incorrect; the LDPS&C is an agency of the state and is, as such, protected by the Eleventh Amendment. *See. Johnson v. Dept. of Public Safety and Corr.*, 2009 WL 382524, at *2 (E.D. La. Feb. 12, 2009).
[52] *Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312 (5th Cir.1999); *Anderson v. Phelps,* 655 F.Supp. 560 (M.D.La.1985).

8

Plaintiff's claims for monetary relief for alleged violations of the Eighth Amendment against the LDPS&C should be dismissed.

### D. Plaintiff's Remaining Allegations Sufficiently State Claims Under the Eighth Amendment and ADA/RA to Survive Screening[53]

#### a. Eighth Amendment

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must demonstrate that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[54] Whether the plaintiff has received the treatment or accommodation that he believes he should have is also not sufficient absent exceptional circumstances.[55] Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.[56] Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[57] *Farmer* lays out both an objective prong and a subjective prong.[58] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[59] Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[60] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

---

[53] Plaintiff's claims against all Defendants, including LDPS&C, survive screening because Plaintiff has, at this juncture, sufficiently alleged a custom or practice of LDPS&C of intentionally delaying "elective" surgeries. Plaintiff has supported his allegations with numerous examples of "elective" surgeries, including his own, being delayed.
[54] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).
[55] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).
[56] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).
[57] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[58] *Id*. at 837.
[59] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[60] *Id.*

9

any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[61] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[62]

Reading Plaintiff's complaint liberally, it appears that surgery was recommended for his left shoulder at some point prior to or during the spring of 2017.[63] Plaintiff also alleges he was "promised elective surgery for his left shoulder injury."[64] However, at the time the complaint was filed approximately two years later, he still had not received this alleged necessary surgery or the MRI that was allegedly recommended by outside physicians.[65] Plaintiff complains that he suffers daily, excruciating pain in his left shoulder and lumbar spine because the treatment being rendered to him, which consists solely of pain medication, is wholly ineffective and that Defendants have delayed necessary diagnostic testing and surgical procedures "designed to resolve the underlying *cause* of the crippling pain and disability."[66]

As discussed above, Plaintiff's claims, though more specific, are analogous to the claims in *Lewis v. Cain*. In *Lewis*, this Court held that the failure "to provide referrals to specialty care providers, where medically necessary [and] failing to implement follow-up treatment instructions of specialists…." violated the Eighth Amendment.[67] In reaching this determination, the Court considered many factors, including the timeliness and adequacy in evaluating the need for specialty care, scheduling and tracking appointments, timely complying with testing and other diagnostic requirements, executing appropriate follow-up directions from specialty care providers,

---

[61] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).
[62] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).
[63] Plaintiff alleges that outside surgeons informed him that he had to receive pre-surgical physical therapy to prepare him for surgery on his left shoulder. R. Doc. 1-2, pp. 20, 22.
[64] R. Doc. 1-2, p. 22.
[65] R. Doc. 1-2, p. 22.
[66] R. Doc. 1-2, pp. 12, 24.
[67] *Lewis v. Cain*, No. 15-318 (M.D. La.) at R. Doc. 594, pp. 87-88.

10

and general failure to coordinate care.[68] These exact actions and inactions are what Plaintiff complains of herein. Because this Court has already concluded that these deficiencies constitute deliberate indifference, the Court is compelled to conclude that Plaintiff has stated a claim for deliberate indifference that is not subject to dismissal at this juncture.[69] Considering the severity of Plaintiff's alleged pain and the relatively long length of time it has allegedly lasted, Plaintiff has alleged sufficient facts to survive at this stage with respect to his claim for deliberate indifference to a serious medical needs.[70]

### b. ADA/RA

Because "[t]he RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts," the Court finds it is unnecessary to distinguish between

---

[68] *Id.* at 89.

[69] Even absent the Ruling in *Lewis*, it is clear that Plaintiff has stated a claim for deliberate indifference. Reading the facts in the light most favorable to Plaintiff, Defendants have implemented a practice that has caused the constant refusal of treatment to effectively manage Plaintiff's pain. Plaintiff alleges that steroid injections do not provide him with any pain relief "because the left shoulder and lumbar injuries have been allowed to deteriorate to the point Plaintiff is disabled and pain management fails completely." R. Doc. 1-2, p. 23. Plaintiff further claims he has severe lower back pain that causes "severe daily sciatic nerve pain that is not alleviated with oral pain medication, or steroid injections." R. Doc. 1-2, p. 23. The care rendered has been wholly inadequate. "Inadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999) quoting *Estelle v. Gamble*, 429 U.S. 97 (1976). Similarly, ["w]here prison authorities deny reasonable requests for medical treatment … and such denial exposes the inmate to undue suffering or the threat of tangible residual injury … deliberate indifference is manifest." *Hacker v. Cain*, 2016 WL 3167176 (M.D. La. June 6, 2016) (quoting *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)). Plaintiff has indicated that surgery, at least on his left shoulder, has been recommended for at least two years, but due to the customs that exist, surgery has been denied to him. Considering the pain Plaintiff is allegedly suffering and the real threat of tangible residual injury (Plaintiff alleges that his left shoulder injury appears to be following a similar path as his right shoulder injury, for which surgery was delayed so long that Plaintiff alleges he never regained normal function of his right shoulder. This indicates the real possibility for residual injury.), he has stated sufficient facts to survive dismissal. Further, a review of the case law indicates similar claims regarding delay of "elective" surgeries have survived dismissal. *See, e.g.*, *Hacker v. Cain*, 2016 WL 3167176 (M.D. La. June 6, 2016) (the Court refused to dismiss a claim of deliberate indifference to a serious medical need when defendants delayed a medically essential cataract surgery because defendants defined it as a non-emergency, elective procedure); *Baker v. Wilkinson*, 635 F.Supp.2d 514, 520-521 (W.D. La. July 2, 2009) ("the classification of a surgery as elective does not abrogate a prison's duty or power to promptly provide necessary medical treatment for prisoners." "Denial of necessary treatment due to classification of the surgery as elective surgery…does not justify cruel and unusual punishment.").

[70] *See Hathaway v. Coughlin*, 37 F.3d 63, 64-69 (2d Cir. 1994) cert. den., 513 U.S. 1154 (1995) (two-year delay of elective hip surgery constituted deliberate indifference).

11

these claims and will address the claims together.[71] Under well-established precedent, prisoner may bring claims against their jailors for disability discrimination under Title II of the ADA and Section 504 of the RA.[72] Title II prohibits discrimination by "public entities," 42 U.S.C. § 12131(1), and state prisons fall squarely within this statutory definition.[73] As a general matter, a plaintiff proceeding under Title II must "show that: (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity."[74] Beyond these general guiding principles, the following about the ADA's and RA's applicability to LDPS&C[75] can be drawn from Fifth Circuit case law.

Although the ADA's reasonable accommodation requirement does not apply under Title II, its "reasonable modifications" requirement does apply in the prison context.[76] The consequence of this distinction is that, though the ADA "does not require prisons to provide *new* services or programs for disabled prisoners," the entities "do have an affirmative obligation to make reasonable modifications…so that a disabled prisoner can have meaningful access to *existing* public services or programs."[77] A plaintiff-inmate must also show that he has either requested a modification or that the defendant was unquestionably aware of the disability.[78] Finally, the Fifth Circuit has held that a defendant's failure to make the reasonable modifications necessary to adjust

---

[71] *Hall v. United States*, Civil Action No. 17-42, 2019 WL 5213931, *1 (S.D. Miss. Oct. 16, 2019) citing *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010).
[72] *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10, 118 S. Ct. 1952, 1954–55, 141 L.Ed. 2d 215 (1998); *see also, e.g.*, *Frame v. City of Arlington*, 657 F.3d 215, 224–25 (5th Cir. 2011).
[73] *Yeskey*, 524 U.S. at 210.
[74] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 889 (E.D. La. 2008).
[75] It appears LDPS&C is the only Defendant against whom Plaintiff seeks monetary relief for violations of the ADA/RA. R. Doc. 1, p. 4.
[76] *Garrett v. Thaler*, 560 Fed.Appx. 375, 382 (5th Cir. 2014).
[77] *Borum v. Swisher Cnty.*, Civil Action No. 14-127, 2015 WL 327508, *9 (N.D. Tex. Jan. 26, 2015) (emphasis added).
[78] *See Taylor v. Principal Fin. Grp., LLC*, 93 F.3d 155, 165 (5th Cir. 2009).

for the unique needs of disabled persons can constitute intentional discrimination under the ADA and the RA.[79] Based on much precedent, the failure to provide a disabled inmate with access to existing modifications can be held to violate the ADA's second title and the RA's five-hundred-and-fourth section.[80]

The LDPS&C is a public entity, and Defendants have not argued otherwise.[81] It appears that LDPS&C is the only Defendant Plaintiff seeks monetary relief against as a result of the alleged ADA/RA violations.[82] Defendant's entire argument for dismissal is premised on the argument that Plaintiff's ADA/RA claim, at its core, is a complaint regarding incompetent treatment.[83] This is a narrow and incorrect reading of Plaintiff's Complaint.[84] Plaintiff has clearly alleged that he does not have meaningful access to existing programs and services due to his alleged disability.[85] These complaints go farther than issues regarding treatment and Plaintiff's assigned duty status. With respect to the LDPS&C, though Defendants argue that the only claims against the LDPS&C are for injunctive and declaratory relief, this is also incorrect.[86] Plaintiff's Complaint clearly states

---

[79] *See, e.g.*, *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004); *Garrett v. Thaler*, 560 Fed.Appx. 375, 382 (5th Cir. 2014).
[80] *See, e.g.*, *McCoy v. Tex. Dep't of Crim. Justice*, No. C-05-370, 2006 U.S. Dist. LEXIS 55403, at *23–24, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) ("In the prison context, ... failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.").
[81] *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government.") (quoting 42 U.S.C. § 12131(1)(B)).
[82] Plaintiff apparently sought declaratory and injunctive relief against Morrison for the ADA/RA violations, but those claims are precluded under the doctrine of *res judicata* as discussed above. R. Doc. 1, p. 4.
[83] R. Doc. 13-1, pp. 9-10.
[84] To the extent Plaintiff attempted to make claims regarding inadequate medical treatment in relation to the ADA/RA (R. Doc. 1-2, pp. 3, 19), those claims are subject to dismissal. *See George v. Louisiana Dep't of Pub. Safety & Corr.*, 2016 WL 3568109, at *10 (M.D. La. June 23, 2016). Though Plaintiff's statement regarding lack of access to services and activities is relatively conclusory, the undersigned finds it sufficient to survive screening, considering Plaintiff's *pro se* status and the allegations of the complaint overall. Additionally, other than stating that Plaintiff cannot state a claim regarding his medical care under the ADA/RA, the Court does not further parse through the particular ADA/RA claims at this stage. The claims made by Plaintiff were also made in *Lewis,* and some failed, while others prevailed. *See* R. Doc. 594 at pp. 109-122. However, those claims were determined after a trial on the merits, not on a motion to dismiss.
[85] R. Doc. 1-2, pp. 26-27. Plaintiff alleges the Defendants have excluded Plaintiff from services, programs, and activities, including recreation and sports, hobby craft, employment, and the work release program.
[86] R. Doc. 24, p. 3.

that, with respect to his claims against the LDPS&C, he is seeking "for ADA/RA disability discrimination damages claims—11th Amendment abrogated by ADA/RA."[87]

Thus, the pertinent questions become whether Plaintiff has a qualifying disability and, considering that the only viable claim is for monetary damages, whether the Eleventh Amendment is abrogated in this case.[88] However, Defendants did not address either of these issues, and it is too early in the proceedings to make such determinations, so the Court pretermits further discussion regarding the viability of these claims.[89]

### E. This Case Should be Stayed and Administratively Closed

Because the issues in this case are, essentially, identical with the issues presented in *Lewis v. Cain*,[90] and a decision regarding *Lewis* will directly impact the matters herein, it is recommended that this matter be stayed and administratively closed pending resolution of the appeal in *Lewis*.[91]

---

[87] R. Doc. 1, p. 4. The Court recognizes that this claim for damages is not also included in the "Remedies" section of Plaintiff's complaint (R. Doc. 1-2, pp. 31-33), but, again, because Plaintiff's complaint is to be liberally construed, the Court interprets the claim as seeking damages against LDPS&C.
[88] *See United States v. Georgia*, 546 U.S. 151, 154 (2006) ("the Act provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." § 12202. We have accepted this latter statement as an unequivocal expression of Congress's intent to abrogate state sovereign immunity.").
[89] Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, and such a determination must be made on a case-by-case basis. *Georgia*, 546 U.S. at 153-54. This requires determining "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent the conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* at 159.
[90] *Lewis v. Cain*, No. 15-318 (M.D. La.).
[91] Factors to be considered in determining whether a stay is appropriate include (1) whether the litigation is at an early stage; (2) whether a stay will simplify the issues in question; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *e-Watch v. ACTi Corp., Inc.*, No. 12-695, 2013 WL 6334372, at *6-7 (W.D. Tex. Aug. 9, 2013) *report and recommendation adopted*, No. 12-695, 2013 WL 6334304 (W.D. Tex. Aug. 26, 2013). This matter is in the early stages of litigation, which weighs in favor of a stay. Additionally, resolution of the issues in *Lewis* will simplify the issues in question, and it does not appear that either party will be prejudiced by a stay. Accordingly, all factors weigh in favor of a stay, so a stay is appropriate.

14

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**, that Plaintiff's *res judicata* claims for injunctive and declaratory relief, claims made regarding inadequate medical treatment that are purported to be brought under the ADA/RA, claims for monetary damages against Lavespere, Morrison, and Singh in their official capacities, and Plaintiff's claims for monetary relief against the Louisiana Department of Public Safety for constitutional violations brought pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that this matter be **STAYED AND ADMINISTRATIVELY CLOSED** pending the outcome of the appeal in *Lewis v. Cain*.

Signed in Baton Rouge, Louisiana, on September 3, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

15