UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ALIEX PAPPILLION (#182589)**                                  **CIVIL ACTION NO.**

**VERSUS**                                                                **19-117-SDD-SDJ**

**LOUISIANA DEPT OF PUBLIC
SAFETY AND CORRECTIONS, ET AL.**

## RULING

Before the Court are cross-motions for summary judgment filed by Aliex Pappillion ("Pappillion"), who is representing himself and is confined at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana, and Defendants, Randy Lavespere, the Louisiana Department of Public Safety and Corrections ("LDPS&C"), John Morrison, and Raman Singh (collectively "Defendants").[1] For the following reasons, the Motion for Summary Judgment filed by Pappillion ("Pappillion's Motion")[2] is denied, and the Motion for Summary Judgment filed by Defendants ("Defendants' Motion")[3] is granted.

**I.    Background**

Pappillion instituted this action against the LDPS&C, John Morrison, Raman Singh, and Randy Lavespere under 42 U.S.C. § 1983. The Court interpreted Pappillion's complaint as complaining of the systematic deficiencies in the medical care provided at LSP, including delaying necessary treatment, such as delaying referrals to specialists, and failing to provide necessary treatments, such as physical therapy and follow-up care

---

[1] R. Docs. 44 & 50.
[2] R. Doc. 44.
[3] R. Doc. 50.

as directed by specialists; the complaint also complained of exclusion from services and programs as a result of his alleged disability.[4]

This Court previously dismissed Pappillion's claims for injunctive and declaratory relief, claims made regarding inadequate medical treatment that were purported to be brought under the Americans with Disabilities Act/Rehabilitation Act ("ADA/RA"), claims for monetary damages against Lavespere, Morrison, and Singh in their official capacities, and claims for monetary relief against the LDPS&C for constitutional violations brought pursuant to 42 U.S.C. § 1983.[5] The claims that remain for adjudication are Pappillion's claims for monetary relief against Morrison, Singh, and Lavespere in their individual capacities for alleged violations of the Eighth Amendment arising from the systematic deficiencies that allegedly caused Pappillion to suffer from deliberate indifference to his serious medical needs and Pappillion's claim for monetary damages against the LDPS&C for violations of the ADA/RA.

## II. Law & Analysis

### a. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[6] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine

---

[4] R. Doc. 25, pp. 5-6.
[5] R. Docs. 25, p. 15; 27.
[6] Fed. Rule Civ. P. 56. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

issue of material fact.[7] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[8] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[9] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[10]

### b. The Claims that are Properly Exhausted and Timely

Exhaustion and prescription form two sides of one coin: claims cannot be so old as to be prescribed, but the claims may not be brought in a court until they go through the administrative process to meet the exhaustion requirement. Generally, claims arising in the prison context must be both exhausted and timely, *i.e.*, not prescribed, to be adjudicated.[11] Regarding prescription, "[t]here is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. It is well established that federal courts borrow the forum state's general personal injury limitations period."[12] In Louisiana, the

---

[7] *Celotex Corp.*, 477 U.S. at 323.
[8] *Anderson*, 477 U.S. at 248.
[9] *Celotex Corp.*, 477 U.S. at 323.
[10] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[11] *Benoit v. Louisiana State Penitentiary*, No. 09-715, 2010 WL 5572773, at *2 (M.D. La. Dec. 6, 2010) (the exhaustion requirement is mandatory and applies broadly to all suits about prison life) (citing *Porter v. Nussle*, 534 U.S. 516 (2002) (quotation marks omitted); *Nottingham v. Richardson*, 499 Fed.Appx. 368, 375 (5th Cir. 2012) ("Statutes of limitations serve as absolute bars to suit.").
[12] *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). *See also, Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Federal courts borrow state statutes of limitations to govern claims brought under section 1983."); *White v. Gusman*, 347 Fed. Appx. 66, 67 (5th Cir. 2009) (unpublished) ("The prescriptive period for a claim brought under § 1983 is provided by the law of the state in which the claim arose.").

relevant prescriptive period is one year.[13]  State law also governs tolling, unless the state provisions regarding tolling are inconsistent with federal law.[14]

Though the Louisiana prescriptive period of one year applies to Plaintiff's claims, federal law governs when his claims accrued.[15]  Accrual is a question of federal law, and the critical inquiry is "when the plaintiff knows or has reason to know of the injury which is the basis of the action."[16]  Once an action accrues, a grievance should be filed to begin the process of exhaustion.  Because inmate-plaintiffs are required to exhaust administrative remedies prior to filing suit, prescription is suspended while a grievance is pending because of the statutorily created impediment to filing suit, which requires an inmate to exhaust his claims.[17]  A claim that may be otherwise untimely may be saved by the continuing tort doctrine, as discussed in further detail below.

The pertinent grievance was filed on November 1, 2017,[18] and Pappillion received the second step response on April 2, 2018.[19]  Accordingly, the prescriptive period was suspended while the grievance was pending.  However, because the filing of a grievance only tolls or suspends, and does not interrupt, the running of the prescriptive period,[20] this Court is required to count against Pappillion the passage of days that elapsed both before the filing of the grievance and after the conclusion of the administrative proceedings.[21]

---

[13] La. C.C. art. 3492; *Clifford v. Gibbs*, 298F.3d 328, 332 (5th Cir. 2002).
[14] *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).
[15] *Harris*, 198 F.3d at 157.
[16] *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993).
[17] La. Civ. Code art. 3467; *Kron v. LeBlanc*, No. 11-2263, 2013 WL 823550, *2 (E.D. La. March 6, 2013).
[18] R. Doc. 12-1, p. 140.  Though Pappillion identified two relevant grievances, the Court has noted only one that is relevant to these proceedings, grievance No. 2017-2374.  Complaints related to the 2013 grievance have long been prescribed.
[19] R. Doc. 1, p. 3.
[20] La. R.S. 15:1172(E) (providing that the limitations period for a prisoner's claim "shall be suspended upon the filing of [an administrative] … grievance and shall continue to be suspended until the final agency decision is delivered.").
[21] *See Adams v. Stalder*, 934 So.2d 722, 725-26 (La.App. 1st Cir. 2006).

This suit was filed on February 21, 2019,[22] so 324 days elapsed between the date Pappillion received the second step response and when this suit was filed. Because the prescriptive period is 365 days, the only timely claims are those arising from incidents occurring in the 41 days prior to the filing of the grievance, unless claims are otherwise saved by the continuing tort doctrine discussed below.[23] Accordingly, the timeframe subject to review is September 21, 2017, to November 1, 2017,[24] unless the incident meets an exception.[25]

---

[22] Pursuant to the prison mailbox rule, which generally applies to the filing of pleadings submitted to courts by Louisiana pro se inmates, an inmate's pleadings are considered to be filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed by the Court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 07-5471, 2008 WL 553186, at *3 (E.D. La. Feb. 28, 2008).

[23] Because Pappillion complains generally regarding medical care, not of just one incident of treatment or lack thereof, and because, as stated above, the time between the incident and the filing of the grievance counts towards the running of the prescriptive period, this Court must count backwards from the date that the grievance was filed to the earliest date of which Pappillion may complain of his medical treatment, without that claim being prescribed. Since 324 days elapsed between receipt of the second step response and filing of this suit, only 41 days remained in the prescriptive period. Accordingly, the only acts/omissions that may be considered are those that occurred in the 41 days prior to the date the pertinent grievance was filed, November 1, 2017. Note, the only relevant treatment or lack thereof that is relevant to this action is the treatment complained of in request for administrative remedy ("grievance") number 2017-2374, which was filed on November 1, 2017. R. Doc. 12-1, p. 139-148. The treatment or lack thereof rendered after the filing of ARP 2017-2374 is unexhausted, unless saved by the logic of the continuing tort doctrine as discussed below.

[24] Pappillion details treatment he received and delays he experienced with respect to other injuries and medical complaints that are not before this Court, such as his right shoulder injury, a hernia, and a foot injury. *See* R. Doc. 44-2. The complaints regarding the right shoulder are admittedly not before this Court. The complaints regarding delay in hernia surgery are also not before this court, and even if they were, those claims would be prescribed because Pappillion underwent surgery for his hernia in November 2016. R. Doc. 44-2, p. 15. The foot injury did not occur until after the filing of this suit and is thus, unexhausted. R. Doc. 44-2, p. 17.

[25] The filing of the class action in *Lewis* did not serve to suspend prescription on Pappillion's claims. Louisiana Code of Civil Procedure article 596, which governs tolling in this instance because § 1983 borrows the state's limitations period, generally including tolling of actions, does not apply to the scenario at hand. (Article 596 contemplates suspension of prescription that begins to run again in three scenarios, none of which are applicable in this case; because none of those scenarios in which prescription begins to run again apply here, logic dictates that prescription was never suspended in this case). Additionally, it would be illogical to suspend the running of prescription of Pappillion's claims because the reason for suspending or tolling the limitations period for individual suits does not apply here. Here, the *Lewis* class action did not seek monetary relief, and Pappillion's claims for monetary relief based upon his own alleged constitutional violations could have been brought at any time during the pendency of the class action because that claim was not subsumed in the class action. *See China Agritech, Inc. v. Resh*, 138 S.Ct. 1800, 1806-07 (2018) (noting that the reason for tolling the limitations period is to avoid assertion of individual claims that may proceed in the class because "[i]f certification is granted, the claims will proceed as a class and *there would be no need for the assertion of any claim individually*."). Here, damages claims *had* to be asserted individually and could not have proceeded in the class action, so the prescribed claims are not saved by the filing of *Lewis*.

### c. The Systematic Failures Recognized as Unconstitutional in *Lewis v. Cain* and at Issue Herein Did Not *Cause* a Constitutional Violation in this Case[26]

At issue herein are policies and practices (hereinafter "practices")[27] that led to the systematic and recurring failures by LSP providers that in tandem caused widespread deliberate indifference throughout LSP. The policies specifically applicable to this case and complained about by Pappillion include the failure of LSP providers to refer patients for specialty care and to follow-up on specialty care recommendations. In *Lewis*, this Court concluded that the systematic failure of LSP personnel to provide referrals to specialty care providers and in failing to follow orders of specialty care providers constituted deliberate indifference.[28]

### i. Deliberate Indifference

Though unconstitutional practices existed, to succeed herein, Pappillion must be able to demonstrate that the unconstitutional practices *caused* a constitutional violation in his particular case, *i.e.*, Pappillion must demonstrate that an actual constitutional violation, here, deliberate indifference, resulted from the practices.[29] Because the summary judgment evidence demonstrates that deliberate indifference did not exist in

---

[26] Pappillion argues that a second "policy, practice or custom" of "tapping into the disenfranchised physician market to employ doctors" is at issue in this suit (R. Doc. 44-2, p. 6), but this Court has never interpreted this suit as complaining of any such policy because the Complaint did not indicate that any such policy was being alleged. R. Doc. 1. Indeed, the claims listed by Pappillion as those being brought specifically do not include this policy. *See* R. Doc. 1, p. 4. Accordingly, this alleged policy, practice, or custom is not discussed herein because it is not before this Court.

[27] As noted in *Lewis*, "[M]ultiple policies or practices that combine to deprive a prisoner of a single identifiable human need, such as [medical care], can support a finding of Eighth Amendment liability." *Lewis v. Cain*, No. 15-318, 2021 WL 1219988, at *39 (M.D. La. March 31, 2021) (internal quotations and citations omitted).

[28] *Lewis v. Cain*, No. 15-318, 2021 WL 1219988, at *41-42 (M.D. La. March 31, 2021).

[29] *See Estrada v. Nehls*, 524 F.Supp. 3d 578, 590 (S.D. Tex. March 9, 2021) (assuming an unconstitutional policy existed, the plaintiff's claims still failed because he did not show the policy caused a violation of his constitutional rights).

Pappillion's particular case, much less result from unconstitutional practices, his claims must fail.

A claim of deliberate indifference to serious medical needs requires an inmate plaintiff to demonstrate that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[30] "[S]ubjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[31] *Farmer* lays out both an objective prong and a subjective prong.[32] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[33] Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[34] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[35] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[36]

In the discrete timeframe that is appropriate for review, as noted above, the following medical records do not demonstrate that the pertinent practices *caused* a constitutional violation, as it appears Pappillion was receiving specialty care, and the

---

[30] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).
[31] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[32] *Id*. at 837.
[33] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[34] *Id.*
[35] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).
[36] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

treatment, or lack thereof, does not rise to the level of a constitutional violation.  On October 18, 2017, Pappillion was seen for a routine checkup in the R.E. Barrow, Jr. Treatment Center at LSP.[37]  On October 3, 18, and 30, 2017, Pappillion attended physical therapy sessions to work on his shoulders due to his prior complaints of shoulder pain and instructions to attend physical therapy.[38]  The physical therapy was ordered by a specialist provider, who Pappillion visited on multiple occasions,[39] and LSP was fulfilling Pappillion's physical therapy needs.[40]  The treatment of Pappillion simply does not rise to the level of deliberate indifference because he was consistently treated.[41]

In addition to the above dates of treatment, some dates and treatment, outside of the decidedly timely and exhausted window may be considered based upon the continuing tort doctrine and the related logic that applies to exhaustion. "The continuing-tort doctrine is one of accrual and thus a question of federal, rather than state, law.[42]  "[A] claim for a 'continuing tort' does not accrue until the tort has ceased."[43]  The doctrine may apply when "the individual suffers an ongoing and persistent injury, rather than a series of discrete injuries."[44]  On a complaint of inadequate medical care, however, "each instance of potentially deliberate indifference [ceases] when [the plaintiff receives]

---

[37] R. Doc. 12-4, p. 286.
[38] R. Doc. 12-4, p. 291-293.
[39] R. Docs. 44-4, p. 74; 44-5, p. 8.
[40] The order from the specialist regarding the left shoulder simply stated "start PT for ROM/RC strengthening, scapular stabilization exercises."  R. Doc. 44-4, p. 74.
[41] Though more frequent physical therapy my have been desirable, the failure to provide additionally physical therapy is insufficient to constitute deliberate indifference, and outside physicians provided Pappillion with a home exercise plan to follow considering his intermittent access to physical therapy.  R. Doc. 44-5, p. 8.  Further, the frequency of physical therapy is a topic that physicians' opinions may differ on and choosing to follow one course of action over another is not deliberate indifference.  *El-Hanini v. St. Charles Parish Jail*, No. 17-966, 2017 WL 6597942, at * 6 (E.D. La. Nov. 16, 2017) ("Differences of opinion among physicians as to the appropriate method of treatment do not constitute deliberate indifference.") (collecting cases).
[42] *Nottingham*, 499 Fed.Appx. at 375.
[43] *Id.* (citing *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980).
[44] *Matthews v. Fleming*, 287 Fed.Appx. 296, 298 (5th Cir. 2008).

medical attention."[45]  Moreover, for a continuous tort to be found, a plaintiff must allege "continuous wrongful conduct on an almost daily basis."[46]

A review of the case law demonstrates that the same logic that underlies the continuing tort doctrine may serve to save some seemingly unexhausted claims from dismissal.[47]  The continuing tort doctrine generally applies to scenarios where the condition is unchanging.  Similarly, if a condition is unchanging, a plaintiff is, generally, only required to exhaust that claim once, even if the condition persists, sometimes for years.  This largely applies when the claim is for conditions of confinement,[48] but this logic has also been applied narrowly to circumstances of deliberate indifference where some very specific medical treatment is needed and refused—the plaintiff need only exhaust the failure to treat one time, not after every medical appointment or sick call where the treatment is refused, and the failure to provide the necessary treatment is a continuing tort until that treatment is provided.[49]  This, however, is the exception to the rule because, generally, "each instance of potentially deliberate indifference [ceases] when [the plaintiff receives] medical attention," so because the indifference ceases, to the extent there is further deliberate indifference that new claim must be exhausted before proceeding.[50]  Accordingly, the continuing tort doctrine serves to save complaints of lack of treatment

---

[45] *Nottingham*, 499 Fed.Appx. at 375.
[46] *Brown v. Cain*, 546 Fed.Appx. 471, 474 (5th Cir. 2013).
[47] *See, e.g.*, *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("Johnson could not have been expected to file a new grievance…each time he was assaulted (which, according to him, was virtually every day), for the entire period during which he remained unprotected in the general population…in such circumstances, prisoners need not continue to file grievances about the same issue.").
[48] *See Johnson*, 385 F.3d at 521.
[49] *See Cook v. Louisiana Workforce L.L.C.*, No. 16-587, 2017 WL 4322412, at *5-6 (M.D. La. Sept. 28, 2017) (applying the continuing tort doctrine to save a claim from prescription when the plaintiff alleged a specific, necessary surgical procedure was continually denied to him and distinguishing that from a generalized failure to provide medical attention.  This Court found that the tort did not cease until the plaintiff received eye surgery).
[50] *Nottingham*, 499 Fed.Appx. at 375.

occurring prior to September 21, 2017, that were not addressed until sometime later. Similarly, to the extent specific treatment was ordered prior to November 1, 2017,[51] not provided, and was sufficiently addressed in the pertinent grievance, any claims regarding the continuing lack of specific treatment are considered exhausted.[52] The claims that may fall into these exceptions are discussed below.

The request for medical treatment by Pappillion closest in time to the relevant timeframe was made on September 8, 2017;[53] on that date, Pappillion completed a health care request form complaining about pain in both shoulders and arising from his sciatic nerve.[54] Pappillion was instructed to keep his upcoming appointment. Pappillion attended physical therapy approximately every other week from April through November 2017.[55] He was also consistently prescribed pain medications during this period, given injections when necessary, and was treated by outside specialists.[56] In November 2017, Pappillion was referred to and treated in the orthopedic clinic and was given injections in his right acromioclavicular joint and his left subacromial space and continued with

---

[51] As noted, plaintiffs are only not required to continuously *re-exhaust* claims. New claims, including those that arose after some treatment was rendered must still be exhausted, unless some specific treatment was required, not provided, and included in the grievance.

[52] *See Adams v. Louisiana Dept. of Corr.*, 2019 WL 1950420, at *4, n. 2 (M.D. La. April 23, 2019) (noting that the Court could not address claims asserted for events occurring after the date of the filing of the pertinent grievance).

[53] Pappillion's health care requests almost always complained of shoulder and back pain, for which he was being treated with pain medications and other interventions as noted herein.

[54] R. Doc. 12-4. Pappillion made frequent requests for medical treatment related to his shoulder and back pain, but all requests were, importantly, handled, and any delay that occurred did not result in substantial harm. *See* R. Docs. 44-5, pp. 6-7 (on June 21, 2017, Pappillion underwent MRI of left shoulder); p. 8 (Pappillion was seen at the UMCNO Orthopedics Clinic on June 27, 2017, and received an injection in his left shoulder). He also attended physical therapy regularly. R. Doc. 45, pp. 10-36.

[55] *See* R. Docs. 45, pp. 95-113; 44-5, pp. 10-26.

[56] On May 23, 2017, it was noted Pappillion needed an MRI on his left shoulder, so it could be evaluated. R. Doc. 12-4, p. 372. On June 6, 2017, he was seen in the R.E. Barrow Treatment Center. R. Doc. 12-4, p. 338. Also in June 2017, Pappillion returned to outside specialists, underwent an MRI, and was given an injection into his left shoulder. R. Doc. 12-4, p. 329. Pappillion continued to have complaints of pain, but the record demonstrates that providers continued to treat him and try different treatment methods.

physical therapy.[57]  Because Pappillion was so consistently treated by both LSP providers and outside specialists, the Court cannot find deliberate indifference in this case.[58]

To the extent Pappillion's back/sciatic pain was not *specifically* addressed in a doctor's appointment between the health care request on September 8, 2017, and the filing of the grievance, he was still continuously being treated with pain medication for his back and shoulders.[59]  On February 2, 2018, Pappillion, while at a doctor's appointment, brought the physician's attention to the fact that his back pain was not addressed in his last visit with the orthopedic specialist, and he was immediately given a referral to the orthopedist for his lower back pain and sciatica.[60]  There was simply no delay between the complaint of lack of treatment for back pain to a physician and the referral.  Though Pappillion may disagree with that treatment, he was being treated and was provided further treatment without significant delay.  On April 9, 2018, a request for an MRI of Pappillion's lumbar spine was made.  Due to continued complaints of back pain, Pappillion was prescribed a Medrol Dosepak to treat his pain on October 8, 2018, in

---

[57] R. Docs. 12-4, p. 285; 50-3, pp. 3 & 53.
[58] Further, though Pappillion is adamant that he needed left shoulder surgery, the *outside* specialist specifically noted that he was "hold[ing] off on complete workup of left shoulder until right shoulder has recovered [from surgery]." *See* R. Doc. 44-4, p. 74.  There is no recommendation from anyone, including the outside specialists Pappillion was referred to, recommending surgery prior to the filing of the pertinent grievance.  Further, physical therapy for the left shoulder was not ordered "in preparation for its repair," as stated by Pappillion; therapy was merely ordered before the physician would subscribe a diagnosis to the left shoulder and develop a further treatment plan. R. Docs. 44-2, p. 20; 44-4, p. 74.  To the extent surgery was recommended after the filing of the pertinent grievance, any claim arising therefrom is unexhausted and not saved by the logic of the continuing tort doctrine, as it applies to exhaustion.
[59] The medical records demonstrate that from September 2017 through February 2018, Pappillion was prescribed medications to manage his pain.  Considering that Pappillion was already taking medications for his pain, there does not appear to be any true delay in treatment.  Rather, he was being consistently treated but disagreed with treatment and sought more.  Mere disagreement with one's medical treatment is insufficient to show deliberate indifference. *Delaughter v. Woodall*, 909 F.3d 130, 138 (5th Cir. 2018).  It seems that Pappillion believes that because he frequently complained doctors should have more quickly changed his treatments or treated him differently, but again, this is a mere disagreement with treatment and insufficient to demonstrate deliberate indifference. *Id.*  The Court also notes that on November 15, 2021, left shoulder surgery was discussed as an option for Pappillion, though the outside physician still provided options for non-operative management for his left shoulder, and because Pappillion preferred surgical intervention, he underwent surgery less than one month later on December 14, 2021. R. Doc. 50-3, pp. 126-128.
[60] R. Doc. 50-3, p. 54.

addition to the multiple medications he was already taking for pain.[61]  On October 12, 2018, an MRI was performed.[62]  On November 5, 2018, physical therapy was ordered for Pappillion's lumbar spine.[63]  Though Pappillion may have disagreed with the course of treatment taken by his doctors, and though LSP physicians may have occasionally taken courses of action that differed from the exact recommendations of outside providers, such is a mere disagreement with medical treatment, which is insufficient to show deliberate indifference.[64]

To the extent Pappillion considered any new treatment to constitute deliberate indifference, he had to exhaust that claim prior to bringing suit because it was substantively different than the claim brought previously.  Considering the consistent treatment in Pappillion's case, including the prescribing of medications, physical therapy, and referrals to outside specialists, the Court cannot find that deliberate indifference occurred or that any practices caused deliberate indifference.[65]

---

[61] R. Doc. 12-4, p. 257.
[62] R. Doc. 50-3, p. 56.
[63] R. Doc. 50-3, p. 57.
[64] *Delaughter,* 909 F.3d at 138 ("mere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice.").  It is also notable that Pappillion's lower back pain was treated extensively by outside physicians.  *See* R. Doc. 12-4, p. 176-77 (At an outside appointment on November 12, 2019, it was noted that Pappillion had undergone physical therapy, corticosteroid injections, steroid dose packs, and anti-inflammatories to manage his back pain and surgery was for the *first* time noted as the potential best course of action: the doctor noted, "[a]t this point in time I think that the optimal course of action would be to pursue surgical correction." Because that was the first time back surgery was recommended, any claim Pappillion may have related to the recommendation of surgery was not exhausted prior to the filing of this complaint, and the treatment following the recommendation is not before this Court).  It is also clear from the record that Pappillion's doctors tried to focus on one ailment at a time, which is not unreasonable and does not demonstrate deliberate indifference.  Within the course of a few years, doctors at LSP and outside specialists to whom Pappillion was referred treated Pappillion's right and left shoulders, as well has his lumbar spine, through medications, therapy, injections, and multiple surgeries.
[65] In Pappillion's particular case, the record is replete with instances of outside treatment involving specialty care, including referrals to neurosurgeons and orthopedists.  There are, in fact, over 1,500 pages of medical records evidencing treatment of Pappillion.  *See* R. Docs. 12 through 12-6. Further, the record indicates a demonstrated effort of LSP personnel to comply with the orders of specialty care providers, which is generally lacking at LSP, but is not in Pappillion's case.  The unconstitutional practices that exist at LSP simply did not cause a constitutional violation in this case.  Though Pappillion suffered from and continues to suffer from chronic pain, he is consistently treated for

### ii. ADA/RA

This Court previously dismissed Pappillion's ADA/RA claims that were in reality claims of deliberate indifference to a serious medical need. Despite the dismissal of these claims, Pappillion's argument solely focuses on how various acts of alleged deliberate indifference, which indeed did not exist in Pappillion's case as discussed above, constituted a violation of the ADA/RA.[66] These claims have already been dismissed by this Court and will not be addressed further. Additionally, there is no evidence in the record to demonstrate either that Pappillion is (1) a qualified individual with a disability or (2) being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his disability; to prevail on a claim under the ADA or RA, Pappillion had to demonstrate these elements.[67] Because of the utter lack of support provided by Pappillion as to these elements, his claims under the ADA/RA must be dismissed. Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment[68] filed by Defendants is **GRANTED**, the Motion for Summary Judgment[69] filed by Aliex Pappillion is **DENIED**, and all remaining claims against the Louisiana Department of Public Safety and Corrections, John Morrison, Raman Singh, and Randy Lavespere are **DISMISSED WITH PREJUDICE**.

---

this pain. There is no evidence that any provider refused to provide referrals to specialty providers or that there was any true failure to follow specialty care recommendations. Under these facts, there is no deliberate indifference. *See Brown v. Perry*, 2021 WL 1160964, at *7 (S.D. Miss. March 25, 2021); *Frazier v. Keith*, 707 Fed.Appx. 823, 824 (5th Cir. 2018) (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment).

[66] R. Doc. 44-1, pp. 17-20.
[67] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 889 (E.D. La. 2008).
[68] R. Doc. 50.
[69] R. Doc. 44March 28, 2022.

Judgment shall be entered accordingly.

Signed in Baton Rouge, Louisiana on <u>March 28, 2022</u>.

*[Signature: Shelly D. Dick]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**